UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CASPER G. HURLEY, )<br>)<br>Defendant. ) | No. 6:21-CR-29-REW-HAI<br><br>RECOMMENDED DISPOSITION |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Wier (D.E. 5), the Court considers reported violations of supervised release conditions by Defendant Casper Hurley. Hurley's supervision was transferred to this District from the Eastern District of Tennessee on May 6, 2021. D.E. 1.

District Judge Leon Jordan of Knoxville entered Judgment against Defendant in November 2014 on Defendant's plea to one count of conspiracy to distribute five grams or more of crystal methamphetamine (a lesser-included offense). D.E. 1-3 (Judgment). Defendant was sentenced to 84 months of imprisonment followed by four years of supervised release. *Id.* at 2-3.

Defendant was released on July 23, 2020. On September 16, 2020, Defendant was referred to Cumberland River Behavioral Health, in McKee, Kentucky, for outpatient substance abuse counseling, and he successfully completed the program on December 17, 2020.

**I.**

On September 21, 2021, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges two violations. According to the Report,

   On September 7, 2021, Hurley reported to the U.S. Probation Office in London, Kentucky, and, after failing to produce a urine specimen for drug testing purposes, submitted to an oral instant test swab, which returned positive for the presence of methamphetamine and amphetamine. He was informed of the positive test results, and he denied any use of methamphetamine. Hurley subsequently produced a urine specimen which again returned positive for the presence of methamphetamine and amphetamine, via instant testing device. Due to Hurley's continued denial of use, the urine specimen was packaged and sealed in his presence, and it was subsequently forwarded to Alere Toxicology Services, for confirmation testing.

On September 21, the lab reported the sample was positive for methamphetamine. Based on the positive methamphetamine urinalysis, Violation #1 charges a violation of the condition that Defendant must not, among other things, use or possess a controlled substance except as prescribed by a physician. This is a Grade C violation.

  Also based on this use of methamphetamine, Violation #2 charges a single violation of two conditions. The first condition is the one that prohibits illegal possession and unlawful use of a controlled substance. The second condition is the one that prohibits commission of another federal, state, or local crime. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's methamphetamine use and possession, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

  On September 28, 2021, the Court conducted an initial appearance pursuant to Rule 32.1. D.E. 6. Defendant had tested positive for COVID-19 that morning, so he appeared (by consent) via video. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral motion for interim detention; Defendant did not argue for release. *Id*. Based on the heavy

defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id.*

At the final hearing on October 18, 2021, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 8. Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violations #1 and #2. *Id.* He admitted using methamphetamine prior to the September 7 office visit. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for both violations as described in the Report. The United States thus established both violations under the standard of section 3583(e).

## II.

The Court has evaluated the entire record, including the Report and accompanying documents, and the sentencing materials from the underlying Judgment in the Eastern District of Tennessee. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to conspiracy to distribute five grams or more of crystal meth, a Class B felony. *See* 21 U.S.C. § 846. Such a conviction carries a 36-month maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation with respect to Violation #1 a Grade B violation for Violation #2.

Given Defendant's criminal history category of VI (the category at the time of his federal conviction) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is 21 to 27 months.  USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation.  *See* 18 U.S.C. § 3583(b) & (h).  Defendant's drug trafficking conviction carries no maximum term of supervised release.  *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

### III.

An additional relevant fact came to light during the final hearing.  As noted in the report, Defendant denied use of illegal drugs during his visit to the Probation Office when he rendered a positive mouth swab and a positive instant urine test.  At the hearing, the defense reported—and the probation officer confirmed—that later the same day (September 7), Defendant texted his probation officer and admitted his methamphetamine use.

The government argued for revocation with an incarceration sentence at the bottom of the Guidelines Range—21 months—with two years of supervised release to follow.  The government also anticipated that Defendant would be evaluated for additional drug treatment upon release.

The government argued there is a need to protect the public and deter criminal conduct when Defendant, who was convicted of meth trafficking, has returned to meth use.  Defendant has an extensive criminal history (Category VI), which is "permeate[d]" with controlled-

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

4

substance use. Defendant's acquisition of meth necessarily involved the black market, and his use raises the risk of a return to trafficking.

The government argued the breach of trust in this case is enhanced by Defendant's initial denial of meth use. At first, Defendant was playing "games," denying use in the face of two positive instant tests. However, Defendant admitted his use later the same day and ultimately stipulated to the violations. Defendant also was successful on supervision for over a year, and this is his first violation. The government observed that Defendant's Guidelines Range was "radically" increased on account of his Category VI criminal history and noted that Defendant's underlying sentence was below his Guidelines Range.

The defense requested twelve months of incarceration followed by 90 days of inpatient drug addiction treatment. Although the defense could not "completely disagree" with anything the government said, the defense argued that 21 months is "awfully harsh" for a first drug positive. The defense wished Defendant had been more "up front" about his meth use with his probation officer. Had Defendant admitted use right away, the USPO might not have sought revocation.

The defense explained that, according to people who know Defendant, he does well when he is working consistently full-time. But he goes "off his rocker" when he is only working sporadically. The defense submitted for the Court's review three letters in support of Defendant. The letters primarily describe Defendant's role in caring for his gravely ill mother.

Defendant addressed the Court. He admitted his guilt and apologized to his family and his probation officer. He noted that his sister and fiancée were in the courtroom. He said there was no excuse for his behavior. He explained that his mother contracted COVID-19 and it "killed her lungs." He said he did not know about it until "hospice" called him and said they had

5

"sent her home to die." He said she had three to six months to live. He said that when he heard this bad news, he "got high" in response. He said that when he sees trouble coming, his reaction is to "go get high." He said he has a bad addiction and asked for the longest available rehab. He stated he had Narcotics Anonymous in prison, but RDAP was not offered at Hazelton.

## IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully possess a controlled substance. Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued for treatment as an alternative to incarceration.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant was indicted for a drug-distribution conspiracy that included 25 codefendants. Defendant told

the Court he only knew three of the codefendants. Based on the description in his PSR, the conspiracy spanned almost five years and Defendant was caught distributing high-potency crystal meth. He was a daily meth user at the time. He pleaded guilty to a Class B lesser-included offense.

The Court next considers Defendant's history and characteristics. His criminal history is extensive and drives his high Guidelines Range (21-27 months). Despite early intervention by the criminal justice system in the form of a felony conviction and two-year sentence at age 26, and an 84-month term for the underlying offense, Defendant (now 48), has returned to criminal conduct while on federal supervision. His history also includes violence – two convictions for assault. His meth use began approximately 27 years ago and escalated significantly during the underlying conspiracy. Defendant's long-term history of drug use and related criminal conduct does not support his statement that he only has substance abuse issues during the times he is not working. In his favor, Defendant was successful on supervision for 14 months with no reported violations. So he can be clean, but a significant term of imprisonment is warranted given his failure overly nearly 30 years to turn away from the drug life and its criminal consequences.

Another factor considers the need for additional training and treatment. The government had "no objection" to a treatment assessment upon release, and the defense requested mandatory inpatient treatment. The probation officer confirmed that the existing conditions will accommodate an assessment upon release. The fact that Defendant was clean for over a year separates him from those Defendants whom the Court typically recommends for mandatory inpatient treatment.

Two other factors, the need to protect the public and the need to deter criminal conduct, do weigh heavily in this case. Defendant's use of an illegal drug necessarily involves contact with drug trafficking. And Defendant trafficked drugs before to support his habit.

The most important factor in this case is the breach of the Court's trust. The Guidelines suggest that the *primary* wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Importantly, Defendant initially received a sentence of 84 months, well below the Guidelines Range of 110 to 137 months.[2] The Guidelines allow this downward departure to be used as a reason to depart above the Guidelines Range upon a violation of supervised release. U.S.S.G. § 7B1.4 cmt. n. 4. Here, what is troubling is Defendant's initial denial of meth use in the face of two positive instant tests. But the effect of this dishonesty is counterbalanced by the fact that he contacted his probation officer later the same day and admitted his meth use. The Court made clear that further dishonesty will not be tolerated.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends a below-Guidelines incarceration sentence of 18 months. When varying

---

[2] The Presentence Investigation Report assessed a Range of 130 to 162 months of imprisonment. The Statement of Reasons, available to the Court but not the parties, describes a Range of 110 to 137 months. The lower Range was the result of reducing the base offense level from 30 to 28, with a corresponding total offense level of 25.

from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

The parties acknowledged that Defendant's Guidelines Range is severe due to his criminal history. Their agreement on this point does not, on its own, warrant a deviation from the Range. As *Johnson* dictates, a deviation must be supported by a case-specific reason, not a broad assessment, applicable to all offenders with a CHC of VI, that the recommended Range is too harsh for a single drug positive. Defendant was successful and hard-working for fourteen months, he ultimately admitted his meth use on the same day as the positive instant tests, and despite his addiction this is his first known violation. The Court is also sympathetic to the reported decline in his mother's health. So a slight deviation from the Range is, in this Court's view, appropriate, but no case-specific reason was identified supporting a sentence below 18 months.

An assessment for treatment upon release will be recommended. And two additional years of supervision is appropriate to monitor Defendant's progress and give him the support of the Probation Office.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon his stipulation, Defendant be found guilty of Violations #1 and #2.

2.  Revocation with a term of imprisonment of 18 months followed by 24 months of supervised release under the conditions previously imposed (D.E. 1-3). The Court recommends that Defendant be assessed for addiction treatment upon his release.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Wier's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 19th day of October, 2021.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge